lml

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WESTAR ENERGY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-4116-JAR** |
| | ) | |
| **DOUGLAS T. LAKE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on defendant Douglas Lake's Motion for Summary Judgment (Doc. 58). Plaintiff Westar Energy, Inc. ("Westar") seeks, in part, a declaratory judgment as to the legal fees and expenses reasonably incurred by defendant for his defense of several matters, most significantly *United States v. David Wittig and Douglas Lake*, Case No. 03-40142-JAR (the "Criminal Case) and his appeals therefrom. Lake has brought a Counterclaim asserting that Westar's refusal to honor its advancement obligation in full is a breach of contract right not subject to any reasonableness requirement. Lake filed the instant motion to address the extent to which Westar is obligated to advance his legal fees for the Class Action and Derivative Action, and the second, and now impending, third, criminal trial against him. For the reasons explained in detail below, the Court grants Lake's motion in part.

## I.    Procedural Background

Westar filed its Complaint on October 5, 2005. Lake filed an Answer and Counterclaim, and Westar responded with a Motion to Dismiss (Doc. 23). On July 31, 2006, Westar filed an unopposed motion for stay of the case (Doc. 45), as the parties had reached an agreement to

settle the issue of the legal fees incurred by Lake that were billed by out-of-state and local counsel, but not the fees incurred for Lake's appeal.  Magistrate Judge O'Hara granted the motion, and a scheduling conference was set for October 3, 2006.  The trial date of June 5, 2007 remained in effect.  Although the settlement eventually fell through, Judge O'Hara granted the parties' motion to continue the stay until the Tenth Circuit ruled on Lake's appeal of his criminal convictions, or until this Court ruled on Lake's anticipated motion for summary judgment, whichever came first.  On March 30, 2007, the Court denied Westar's motion to dismiss Lake's Counterclaim (Doc. 73).  The instant motion for summary judgment, filed December 22, 2006, went under advisement on March 29, 2007.

After the Tenth Circuit issued its order reversing Lake's convictions on January 5, 2007, the parties filed a status report setting forth their respective positions regarding the stay (Doc. 77).  Judge O'Hara continued the status conference indefinitely pending a ruling on the government's motion to reinstate restraining orders in the Criminal Case.[1]  At the Court's direction, the parties filed briefs supplementing Lake's motion for summary judgment by addressing future advancement obligations for the upcoming third trial (Docs. 80, 81).

## II.   Uncontroverted Facts[2]

On September 29, 1987, Kansas Power & Light, now known as Westar, adopted its Articles of Incorporation (the "Articles").  Article XVIII (2)(a) of the Articles provides in relevant part:

---

[1]Case No. 03-40142-JAR (Doc. 805.)

[2]The Court notes that Lake set forth additional facts in his reply to Westar's response in opposition to Lake's motion for summary judgment (Doc. 72).  Such recitation of additional facts on reply does not comply with D. Kan. Rule 56.1 and the Court thus does not consider them.

2

Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer, of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Kansas General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) *reasonably incurred* or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators: provided, however, that, except as provided in paragraph (b) hereof, the Corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Corporation.  The right to indemnification conferred in this Section shall be a contract right *and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition*: provided, however, that, if the Kansas General Corporation Law requires, the payment of such expenses incurred by a director or officer in his of her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this

3

> Section or otherwise.  The Corporation may, by action of its Board of Directors, provide indemnification to employees and agents of the Corporation with the same scope and effect as the foregoing indemnification of directors and officers.  (emphasis added)

On December 4, 2003, Lake signed an Undertaking for the advancement of legal fees and expenses incurred in connection with *In re Westar Energy, Inc. Securities Litigation*, No. 03-4003-JAR (the "Class Action") and *Epstein v. Wittig et al.*, No. 03-4081-JAR (the "Derivative Action").   On July 27, 2004, Lake signed a similar Undertaking for the advancement of legal fees and expenses incurred in the Criminal Case, which states:

> I, Douglas T. Lake, hereby agree that I will immediately repay Westar Energy, Inc. ("Westar") any payment it has advanced to me to cover *my reasonable attorney's fees and other expenses* in connection with cases of **In re Westar Energy, Inc. Securities Litigation**, No. 03-4081-JAR, and **U.S. v. Wittig**, 03-CR-40142-JAR (each pending in the United States District Court for the District of Kansas) in the event it is ultimately determined, in accordance with Westar's organizational documents and applicable law, that I am not entitled to be indemnified by Westar.  I understand that this means, among other things, that as defined under applicable law I am only entitled to be indemnified by Westar if I acted in good faith and in a manner I reasonably believed to be in or not opposed to the best interests of Westar, and I had no reasonable cause to believe my conduct was unlawful. (emphasis added)

Article XVIII (2)(b), entitled "Right of Claimant to Bring Suit," and states as follows:

> If a claim under paragraph (a) of this Section is not paid in full by the Corporation within thirty days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim.

Westar hired Lake as an officer effective September 1, 1998, and he was employed as such until December 2002.  Over that time, and at all times since then, the Articles have

4

remained unchanged with respect to the provisions relating to indemnification and advancement.

In September 2002, a federal grand jury sitting in the District of Kansas issued subpoenas to Westar for documents.  Shortly thereafter, Westar, by consent resolution of its Board, formed a Special Committee charged with investigating "matters relating to the management of the Company, including without limitation all matters that may relate to or arise during an investigation by a federal grand jury in Topeka, Kansas and any other government or regulatory investigation or inquiry."

In October 2002, the Westar Board passed a resolution authorizing the advance payment of attorneys fees in connection with the grand jury investigation and the related Special Committee investigation:

> RESOLVED, that the Company is authorized to pay in advance all expenses, including attorneys' fees, *reasonably incurred by any person* (an "Indemnified Person") who is or was a director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, in connection with an investigation by the United States Attorney's Office in Topeka, Kansas, including a related investigation by a special committee of the Company's Board of Directors, subject to the receipt of an undertaking by or on behalf of such Indemnified Person to repay the amount advanced upon a determination that such Indemnified Person is not entitled to be indemnified for such expenses; and further

> RESOLVED that the officers of the Company are hereby authorized to take such further actions as they may deem necessary or appropriate to carry out the purpose and intent of the foregoing resolution. (emphasis added)

In late September 2002, Lake retained New York attorney Thomas Fitzpatrick to represent him in connection with the Special Committee investigation and the federal grand jury investigation.  Fitzpatrick's rate was $465 per hour at that time.  Lake ultimately replaced

Fitzpatrick with the law firm of Hughes Hubbard & Reed, LLP ("Hughes Hubbard"), which had been representing him in connection with an arbitration action that Westar filed against him.  In December 2003, Lake retained the law firm of Hite Fanning & Honeyman LLP ("Hite Fanning") from Wichita, Kansas to act as local counsel in matters in the United States District Court for the District of Kansas.

### *Fees in Civil Cases*

 On January 14, 2003, a complaint was filed against Westar and others in the Class Action, and on April 18, 2003, a complaint was filed against Westar and others in the Derivative Action.  After the Special Committee published the Debevoise Report, setting forth the conclusions of the Debevoise firm's investigation on its behalf, the plaintiffs in both the Class Action and the Derivative Action amended their complaints to include Lake as a defendant.

Hughes Hubbard and Hite Fanning represented Lake in the Class Action and Derivative Action.  Both cases were settled by agreement.[3]  Lake incurred legal fees and expenses of $118,418.22 in the Class Action and $101,377.53 in the Derivative Action and forwarded bills for the same to Westar.  Westar has not paid any portion of those bills, nor has it indicated why.

### *Fees in Criminal Case*

The grand jury returned an indictment against Lake and co-defendant David Wittig on December 3, 2003 on charges relating to his employment as an officer and, at various times, director, of Westar and certain of its subsidiaries.  On April 5, 2004, the Court entered a restraining order preventing Westar from advancing legal fees to Lake in the Criminal Case.  That order was modified on June 30, 2004, to allow Westar to advance legal fees in the criminal

---

[3]Orders and Final Judgments approving the Settlement Agreements in the Class Action and Derivative Action were entered in the respective cases on September 1, 2005.

case and the arbitration between Westar and Lake concerning their employment dispute, but ordering that any such advancements be held in escrow rather than be dispersed to the attorneys. On August 13, 2004, after an evidentiary hearing,[4] the Court modified the restraining order to allow unrestricted advancement by Westar of the legal fees and expenses incurred by both defendants in the Criminal Case.

On September 2, 2004, approximately one month before the criminal trial was to commence, Westar made its first advance of legal fees and expenses incurred by Lake in the Criminal Case in the amount of $1,543,206.37.  That advance was in satisfaction of bills Hughes Hubbard sent to Westar on August 20, 2004 for legal fees and expenses incurred by Lake in the Criminal Case for work performed by Fitzpatrick from December 2002 through May 2003, Hite Fanning from December 2003 through June 2004, and Hughes Hubbard from December 2003 through July 2004.  At that time, Westar did not object to the counsel Lake had chosen, nor to the rates charged, nor to the total amount of fees.

On September 14, 2004, Hughes Hubbard sent Westar a letter requesting the company advance $541,972.15 for legal fees and expenses incurred by Lake in the Criminal Case for work performed by Fitzpatrick from June 2003 through December 2003, Hite Fanning in July 2004 and Hughes Hubbard in August 2004.  On October 4, 2004, Westar advanced the entire amount of legal fees and expenses that Lake had requested.  At that time, Westar did not voice any objections.

The first trial began on October 12, 2004, and ended on December 20, 2004, after a mistrial was declared when the first jury failed to reach a verdict.  On October 15, 2004, Hughes

---

[4]*United States v. Jones*, 160 F.3d 641 (10th Cir. 1998).

Hubbard sent Westar a letter requesting that the company advance $806,305.52 for legal fees and

expenses incurred by Lake in the Criminal Case for work performed by Hughes Hubbard in

September 2004.  On November 9, 2004, counsel for Westar sent Hughes Hubbard a letter

stating that Westar would not advance more than $500,000 of the $806,305.52 incurred in

September 2004.  The letter states in relevant part:

> The Company has reviewed your September bill and has
> considered the relevant law.  Based on the information currently
> available, the Company cannot conclude that $806,303.52 for the
> month of September constitutes reasonable attorneys fees.  As
> such, the Company is not prepared to advance the full amount of
> the invoice.  The Company notes that the present issue is one of
> advancement of the fees necessary to conduct Mr. Lake's defense,
> and not about the ultimate obligation of repayment, or
> indemnification, as to which the Company continues to reserve all
> its rights.  Given that Mr. Lake currently is on trial, the Company
> does not wish to take the position that it will not advance any fees
> to Mr. Lake for the September bill nor does it wish to distract you
> from your trial work.  Therefore, and without conceding that any
> of the fees incurred during September are reasonable, the
> Company will advance legal fees to Mr. Lake in the amount of
> $500,000.

Westar advanced $500,000 to Lake's attorneys on December 15, 2004.

In three letters dated November 8 and 23 and December 13, 2004, Hughes Hubbard

requested Westar advance legal fees and expenses that Lake incurred during the first two months

of the first trial, October and November 2003, totaling $1,845,338.37.  On March 9, 2005,

Westar sent Hughes Hubbard a letter in response stating that it would only advance $1,200,000

of the amount Lake requested.  As in the previous letter, Westar states that it has concluded that

the bills and total amount for services through November 2004 are unreasonable.  The letter goes

on to set forth the parties' agreement in order to avoid litigating the issues:

> 1–The Company will advance $1.2 million for your firm's unpaid

8

2004 invoices for services through November 30, 2004;

2–Neither the Company nor Mr. Lake will litigate the issue of further advancement for any of the bills for services through November 30, 2004;

3–In order to give the Company additional assurance for advancement for Mr. Lake's legal bills beyond the undertaking signed by Mr. Lake, Mr. Lake agrees that in the event of a criminal conviction after final determination of guilt of Mr. Lake in United States v. Wittig and Lake, Mr. Lake will forfeit to the Company any right he might have to any assets being held by the Company (including any shares, RSU's, vacation pay, etc.) to the extent necessary to satisfy repayment of advances for legal fees. Therefore, and without conceding that any of the fees or expenses incurred are reasonable, the Company will advance legal fees and expenses to Mr. Lake in the amount of $1.2 million for your bills through November 30, 2004.

Furthermore, *the Company expressly reserves all of its rights to object to any future advancements requested by Mr. Lake on any grounds, including the reasonableness of the bills, and Mr. Lake agrees that any advancements toward his legal fees and expenses in the criminal case that have been made or may be made in the future by Westar shall not be considered a waiver of Westar's rights to challenge the reasonableness of such legal fees and expenses in the future for purposes of advancement or indemnification.* We understand that Mr. Lake reserves his rights with respect to seeking full indemnification of fees and expenses to the extent applicable under Westar's articles of incorporation. (emphasis added).

By way of agreement, Lake signed the original of the letter from Westar. On March 10, 2005, Westar advanced $1,200,000 to Lakes' attorneys.

On March 16, 2005, Hughes Hubbard sent Westar a letter requesting that the company advance $890,744.06 for legal fees and expenses incurred by Lake in the Criminal Case for work performed by Hughes Hubbard in December 2004, January 2005 and February 2005. On April 13, 2005, Westar sent a check to Hite Fanning for the full amount of legal fees and expenses

Lake incurred for that firm's work from August 2004 through January 2005, totaling $78,809.41.

On April 21, 2005, Westar responded to Hughes Hubbard's March 16 request for advancement,

agreeing to advance the full amount of Lake's legal fees and expenses incurred in January and

February 2005, and all but $90,000 of Lake's legal fees incurred in December 2004.  As with the

other letters, Westar expressed that the bills and total amount for services are unreasonable.  The

letter goes on to provide specific objections:

> In particular, the Company takes issue with your December 2004
> invoice. *Among other things, your December invoice reflected 7-8
> professionals at a time working on the case, which the Company
> does not view as reasonable.  Additionally, on at least two days it
> appears that attorneys were packing boxes for more than eight
> hours and charging the Company.*  Although the Company does
> not concede that Mr. Wittig's counsel's bill for services rendered
> in December 2004 is reasonable, we note that your fees were
> $182,641.25 higher than Wittig's counsel (almost 70%) for that
> same month.  The Company also requests that you provide an
> explanation concerning the substantial expenses for "express
> delivery" incurred in December and January, and for "professional
> services" in January and "publications" in February.  *The above
> are just examples, and not meant to be an exhaustive list, of some
> of the issues the Company believes results in fees and expenses
> that are not reasonable*. . . . Additionally, the Company reserves
> the right to offset against future bills the expenses advanced for
> December - February if it does not receive satisfactory explanation
> for the expenses. (emphasis added)

On April 25, 2005, Westar advanced $800,744.06 of the amount Lake requested to be advanced.

This would be the last advance Westar made on legal fees and expenses incurred in the Criminal

Case.

On May 23, 2005, the Court reinstated the restraining order in the Criminal Case with

respect to advanced legal fees, holding that an eight-week trial had transpired, with testimony

and evidence with respect to the government's allegations that defendants' right to advancement

10

of legal fees in the criminal proceedings is derived from the alleged scheme or conspiracy between the defendants in this case.  Any legal fees and expenses advanced by Westar were required to be placed into escrow.  This restraint remained in place until the Court lifted it following the conclusion of the second trial on September 28, 2005.

On June 10, 2005, Hughes Hubbard sent Westar a letter requesting that the company advance into escrow the legal fees and expenses Lake incurred in the Criminal Case in March and April 2005, in the amount of $408,691.99.  Hughes Hubbard reminded Westar that the Court's order made clear that the "freeze order" did not relieve Westar of any contractual obligations to advance legal fees and expenses and noted that Lake was appealing the Court's order to the Tenth Circuit on an expedited basis.  On July 28, 2005, Westar responded with a letter communicating Westar's refusal to advance any more legal fees and expenses incurred by Lake in the Criminal Case.  The letter stated in relevant part:

> As you know, by order dated May 23, 2005, *Judge Robinson re-instituted the freeze order prohibiting the Company from advancing payments for legal fees to Mr. Wittig and Mr. Lake*. Both defendants have appealed Judge Robinson's order and that appeal is pending.  Additionally, the re-trial of Mr. Wittig and Mr. Lake is nearing its conclusion and it is anticipated that a verdict will be rendered within the next few weeks, which may well resolve many if not all of the issues concerning legal fees.  *Given the status of this issue, the Company sees no purpose in making any payments for advancement into a Hughes Hubbard escrow account at this time*.  Mr. Lake is not harmed by this decision because Judge Robinson's order prohibits counsel from using the funds to satisfy the legal bills.  The Company has continued to accrue contingent liabilities for the payment of defense fees should payment become required and as you are aware the Company has more than sufficient assets to satisfy the payment of legal fees, if necessary.  Therefore, transferring fees into a Hughes Hubbard escrow account at this time would serve no purpose. (emphasis added).

11

The letter concluded by noting Lake's bills for February through April 2005 amount to more than two-thirds greater than the amount billed for Mr. Wittig's defense during the same period, and are unreasonable.

The second trial commenced on June 14, 2005 and ended on September 15, 2005, with convictions of Wittig on all counts and partial convictions of Lake.  In its forfeiture verdicts, the jury found that Lake's right to advancement of legal fees were not subject to forfeiture.  On October 5, 2005, Westar filed the instant action seeking a declaratory judgment as to the amount legal fees and expenses reasonably incurred by Lake for his defense.

Lake retained the law firm of Wilmer Cutler Pickering Hale & Dorr LLP ("Wilmer Hale") to represent him on appeal.  The notice of appeal was filed in April 2006, was fully briefed and submitted on August 24, 2006 and argued before the Tenth Circuit on September 29, 2006.  Wilmer Hale sent Westar letters on January 13 and 31 and September 6, 2006 requesting that the company advance legal fees and expenses Lake incurred in connection with the criminal appeal.  Their total advancement request was $2,277,425.02.  On January 20, 2006, Westar's General Counsel, Larry Irick, sent Wilmer Hale a letter communicating Westar's refusal to advance any legal fees and expenses for Lake's appeal because it believes the fees incurred by Lake are "unreasonable, extraordinary, unnecessary, and excessive."  The letter states in relevant part:

> Under Westar's articles of incorporation and applicable law, Westar's obligation is to advance legal fees and expenses reasonably incurred by Mr. Lake in the criminal proceeding.  Your firm is the fourth firm from which we have received statements for legal fees and expenses, and the reasonableness of the fees and expenses Mr. Lake has incurred and for which he seeks advancement cannot be evaluated by isolating one firm's work.  Thus, your firm's fees and expenses are simply a piece of Mr.

> Lake's request for advancement. . . . Westar has filed a lawsuit against Mr. Lake in United States District Court in Kansas seeking a determination of the amount of the legal fees and expenses advanced and for which he seeks payment that were reasonably incurred.  Whether Westar has an obligation to advance your firms's fees can only be evaluated in light of a decision in the pending lawsuit.  Thus, Westar believes it has no obligation to advance your firm's fees and Westar is unwilling to make any payment at this time.  I note that your firm has devoted substantial time to reviewing materials from the two trials.  I see no circumstances under which Westar should be responsible for work related to your firm getting up to speed.  *Additionally, in the present circumstances, there is no basis for Westar paying hourly rates greater than those customarily charged by attorneys in the place where the trial took place.*  (emphasis added)

Westar again refused to advance any fees and expenses for the appeal by letters dated March 7, 2006 and August 30, 2006.  In the March 7 letter, Irick referred to the rate at which Lake's fees are mounting as "astonishing."  In the August 30 letter, Irick stated, "There can be little doubt that your firm's fees related to the appeal will reach a level at the end of the process that no reasonable person could have foreseen or imagined when your firm undertook this representation."

### *Appeal to Present*

On January 5, 2007, the Tenth Circuit reversed defendants' convictions.[5]  In so doing, the Tenth Circuit held that the wire fraud and money laundering counts cannot be retried, but that the counts for conspiracy, circumvention of internal controls and forfeiture would be remanded for retrial. On February 27, 2007, the government moved to reinstate restraining orders and sought additional conditions of release of defendant Wittig.  The government requested that the restraining orders rescinded by this Court be reinstated to restrain the directly forfeitable assets,

---

[5]*United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007).

13

including advancement of attorney fees, and to prevent defendant Wittig and his family members and agents from further dissipation of assets.  The Court deferred ruling on the motion, as the government had yet to announce its intention with respect to retrial of the remanded counts.  On April 30, 2007, the government confirmed its intent to retry the case for a third time, and trial is currently set for January 14, 2008.

On May 29, 2007, Lake's counsel filed a Motion to Withdraw from the Criminal Case, in part on the grounds that they could no longer continue representation for the third trial due to Westar's refusal to advance any further legal fees or expenses.  That motion remains pending. On June 28, 2007, the Court entered an order denying the government's motion to restrain advanced legal fees and expenses, and granting its request to restrain the remaining forfeitable assets listed in Count 40 of the Superseding Indictment.

*Fee Summary*

Between January 29, 2004 and April 25, 2005, Westar advanced funds for Lake's legal fees in the criminal case six times, totaling **$4,664,731.99**.

Lake summarizes the legal fees and expenses he has thus far incurred and for which he has requested an advancement pursuant to the instant motion:

| | |
|---|---|
| Criminal Case | $11,980,543.55 |
| Derivative Action | $101,377.53 |
| Class Action | $118,418.22 |
| **Total** | **$12,200,338.30** |

Of the $11,980.543.55 in fees and expenses incurred in the Criminal Case, $7,315,811.56

remains outstanding and at issue in this litigation.[6]  Lake's instant motion, however, does not

seek repayment of the full amounts of invoices for which Westar made partial payments before it

stopped advancing.  The amount outstanding on partially paid invoices is $1,041,643.39.  Lake's

motion addresses only the later invoices for which Westar made no advancement, totaling

**$6,274,116.67.**[7]

## III.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[8]  A fact is only material under this standard if a dispute over it would affect the outcome

of the suit.[9]  An issue is only genuine if it "is such that a reasonable jury could return a verdict

for the nonmoving party."[10]  The inquiry essentially determines if there is a need for trial, or

whether the evidence "is so one-sided that one party must prevail as a matter of law."[11]

The moving party bears the initial burden of providing the court with the basis for the

motion and identifying those portions of the record that show the absence of a genuine issue of

---

[6]Westar claims that Lake erred in his arithmetic and overstates the fees for which he has sought advancement by $283,089.53.  This amount corresponds with Hughes Hubbard's March 2005 bill for the Criminal Case, and was apparently omitted from Westar's calculation.  If this does not resolve the discrepancy, the parties are directed to confer and agree to a correct amount billed.

[7](Doc. 61 at n.2.)

[8]Fed. R. Civ. P. 56(c).

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10]*Id.*

[11]*Id.* at 251–52.

material fact.[12]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[13]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[14]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[16]

## IV.   Discussion

This opinion addresses what should be a discrete legal issue—whether Westar must honor its obligation to advance Lake his legal fees and expenses under the terms of Westar's Articles.  The Court will endeavor to limit its analysis to this issue, dealing first with the issue of Lake's entitlement to such advances in the context of past-due amounts and future advances. The Court will then determine the appropriate remedy at this stage of the proceedings.

### A.   Advancement of Legal Fees and Expenses

A corporate officer or director may be indemnified for expenses incurred by reason of the

---

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[14]*Id.*

[15]*Id.*

[16]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

fact of that status.[17]  "Indemnification" is basically a right to reimbursement by the corporation

after the agent has been determined to be entitled to have the corporation bear his or her losses.[18]

Given the length of many investigations and legal proceedings, indemnification is of diminished

value to the employee if it comes at the end of the case.[19]  Accordingly, most states have enacted

statutory provisions enabling companies to advance officers and directors costs of defending

civil and criminal actions.[20]  The statutory authorization for a corporation to advance the agent's

often considerable defense expenses prior to such a determination is a distinct legal right, which

can be either mandatory or permissive.[21]  In Kansas, the advancement provision is found at

K.S.A. § 17-6305(e), which states:

> (e) Expenses, including attorney fees, incurred by a director or
> officer in defending a civil, criminal, administrative or
> investigative action, suit or proceeding may be paid by the
> corporation in advance of the final disposition of such action, suit
> or proceeding upon receipt of an undertaking by or on behalf of the
> director or officer to repay such amount if it is ultimately
> determined that the director or officer is not entitled to be
> indemnified by the corporation as authorized in this section. Such
> expenses, including attorney fees, incurred by former directors and
> officers or incurred by other employees and agents may be so paid
> upon such terms and conditions, if any, as the board of directors
> deems appropriate.

The underlying principle of indemnification was recently explained by the Delaware

Supreme Court: "Indemnification encourages corporate service by capable individuals by

---

[17]*See generally* 18B AM. JUR. 2D *Corporations* § 1649 (2007).

[18]*See generally* JOHN F. OLSON & JOSIAH O. HATCH, DIRECTOR & OFFICER LIABILITY § 5:13 (2006).

[19]*See generally* DAN K. WEBB, CORPORATE INTERNAL INVESTIGATIONS § 5.04 (2006).

[20]*See id.*

[21]*Advanced Min. Sys. v. Fricke*, 623 A.2d 82, 83 (Del. Ch. 1992).

protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service."[22]  Likewise, advancement is an important corollary to indemnification as it provides corporate officials immediate interim relief from the personal financial burden of paying significant on-going expenses involved with complicated civil and criminal white-collar cases.[23]  Permitting advancement is considered "sound public policy" because "a person who serves as an entity in a representative capacity should not be required to finance his or her own defense."[24]  Advancement "provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings."[25]  Advancement is necessary because "[w]hether a corporate officer has a right to indemnification is a decision that must necessarily await the outcome of the investigation or litigation."[26]  Advancement "fills the gap . . . so the corporation may shoulder . . . interim costs."[27]  "The value of the right to advancement is that it is granted or denied while the underlying action is pending."[28]  Recent decisions in Delaware have rejected efforts by corporations that have promised mandatory advancement to disavow those promises due to the alleged—and in some cases admitted or proven—wrongful nature of the conduct for which

---

[22]*Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del. 2005).

[23]*Id.* at 211.

[24]MODEL BUS. CORP. ACT ANN. § 8.53 cmt. 8-337 (3d ed. 2005).

[25]*Homestore*, 888 A.2d at 211.

[26]*Kaung v. Cole Nat'l Corp.*, 884 A.2d 505, 509 (Del. 2005).

[27]*Id.*

[28]*Morgan v. Grace*, No. Civ. A. 20430, 2003 WL 22461916, at *1 (Del. Ch. Oct. 29, 2003).

advancement is sought.[29]

      Westar's Articles were patterned after Delaware corporate law and both Westar and Lake have acknowledged that Delaware case law regarding § 145 of the Delaware General Corporation Law is persuasive in interpreting advancement provisions created under K.S.A. § 17-6305.[30]  Westar's advancement provision, which states that Lake's indemnification rights *shall* include the right to be paid by the Company the expenses incurred in defending any such proceeding in advance of its final disposition, is mandatory.  The Articles condition any advance "upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation. . . ."  Article VXIII (2)(a) does not condition acceptance of the undertaking upon Westar's approval of the director or officer's legal counsel.

      While no corporation is required to provide for advancement of legal fees and expenses, mandatory advancement provisions, such as that found in Westar's Articles, are set forth in many corporate bylaws and indemnification agreements.[31]  The directors of these corporations all presumably have determined in their business judgment that mandating advancement, rather than permitting it on a case-by-case basis, better serves the goals of advancement discussed above.[32]  In Delaware, the rights of potential recipients of mandatory advancements are enforced as a

---

[29]*See, e.g. Homestore*, 888 A.2d at 204; *Reddy v. Elec. Data Sys. Corp.*, No. Civ. A. 19467, 2002 WL 1358761, at *5 (Del. Ch. June 18, 2002).

[30]*Battenfeld of Am. Holding Co. v. Baird, Kurtz & Dobson*, Case No. 97-2336-JWL, 1999 WL 1096047, at *2 (D. Kan. Nov. 8, 1999) ("[T]he court looks to cases interpreting section 145 of the Delaware General Corporation Law, Del. Code. Ann. tit. 8, § 145, the statute upon which section 17-6305 is expressly patterned.").

[31]*Homestore*, 888 A.2d at 218.

[32]*Id.*; *Scharf v. Edgcomb Corp.*, No. 15224, 1997 WL 762656, at *4 (Del. Ch. Dec. 2, 1997).

contract in "summary proceedings" authorized by § 145(k) of the Delaware General Corporation Law, which grants the Court of Chancery authority to summarily determine a corporation's obligation to advance expenses.[33]  "By its very nature, a proceeding of this kind must be summary in character, because if advance indemnification is to have any utility or meaning, a claimant's entitlement to it must be decided relatively promptly."[34]  As a result, the scope of advancement proceedings under § 145(k) is limited to determining the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation or indemnification or recoupment of sums previously advanced.[35]

As Westar points out, the Kansas advancement statute does not have a "summary determination" provision like Delaware.  Nevertheless, the Court finds that § 145(k) does not diminish the persuasiveness of Delaware case law in interpreting the advancement provisions of K.S.A. § 17-6305.  As noted in the legislative history to § 145, subsection (k) is a jurisdictional provision intended to vest the Delaware Chancery Court with jurisdiction over indemnification claims.  This was necessary due to Delaware's specific allocation of jurisdiction among its courts over claims at law and claims in equity.  The Court of Chancery, which exercises jurisdiction over claims at law, did not have subject matter jurisdiction over indemnification and

---

[33]Del. Code Ann. tit. 8, § 145(k) (2005); *see also Homestore*, 888 A.2d at 213 ("The scope of an advancement proceeding is usually summary in nature and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions.").

[34]*Lipson v. Supercuts, Inc.*, No. Civ. A. 15074-NCC, 1996 WL 560191, at *2 (Del. Ch. Sept. 10, 1996); *see also Reddy,* 2002 WL 1358761, at *9.

[35]*Kaung v. Cole Nat'l Corp.*, 884 A.2d 505, 509-10 (Del. 2005) ("*Kaung II*"); *Homestore*, 886 A.2d at 503.

advancement claims until § 145 was amended.[36]  This allocation of jurisdiction has no bearing on the application of the statute in Kansas, which merged law and equity long ago.  Delaware courts have clarified that the summary nature of advancement proceedings is not based on § 145(k), as advancement proceedings have always been decided in a summary fashion.[37]

The touchstone for awarding fees in an indemnification action by a corporate officer is reasonableness.[38]  At issue in this case is whether Westar's advancement obligation is also subject to a reasonableness requirement.  The specific provision for advancement in Westar's Articles does not contain the word "reasonable."  However, Delaware courts have held that under similar circumstances, "any element of reasonability is derived solely from the overall requirement of reasonableness found in the Delaware General Corporation Law."[39]  And, the Delaware Supreme Court has noted that all contracts for advancement and indemnification are subject to an implied reasonableness term.[40]  Thus, Westar is not required to advance unreasonable expenses, but is required to advance reasonable ones.[41]

Lake asserts that an inquiry into the reasonableness of legal fees is very limited at the advancement stage.  Citing Delaware case law, Lake argues that Westar can only lawfully refuse to advance if (1) there is a legitimate dispute that the right to advancement is even triggered at

---

[36]*Yuen v. Gemstar-TV Guide, Int'l, Inc.*, No. 398-N, 2004 WL 1517133, at *3 n.15 (Del. Ch. 2004).

[37]*See, e.g., Citadel Holding Corp. v. Roven*, 603 A.2d 818, 821 (Del. 1992); *Lipson*, 1996 WL 560191, at *4.

[38]*May v. Bigmar, Inc.*, 838 A.2d 285, 289 (Del. Ch. 2003).

[39]*Dunlap v. Sunbeam Corp.*, No. Civ. A. 17048, 1999 WL 1261339, at *5 n.9 (Del. Ch. July  9, 1999) (addressing circumstances where corporation's bylaws do not address reasonableness).

[40]*Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *5 (citing *Citadel*, 603 A.2d at 823).

[41]*Citadel*, 603 A.2d at 824.

all, e.g., the lawsuit or proceedings does not relate to the officer's employment, or (2) if the advancement request is "quite obviously unjustified, rising to the level of abuse."  Lake argues that neither of these scenarios apply to this case.  Westar counters that Delaware has not adopted such a standard.

Although the parties do not cite to any case involving outright refusal to advance fees based on allegedly excessive rates, the Court finds instructive the case of *Kaung v. Cole National Corp.* ("*Kaung I*"),[42] where the executive sought reimbursement for fees charged by a non-attorney "advisor" of a questionable nature and withheld information about that advisor.  The Delaware Court of Chancery rejected the plaintiff's argument that "an inquiry into the reasonableness of the fees is not appropriate at the advancement stage," which the court characterized as in essence, a request for a "blank check" from the corporation.[43]  The court stated:

> Delaware law recognizes the right to advancement as distinct from the right to indemnification.  This, however, does not by itself mean that a reasonableness inquiry is inappropriate at the advancement stage.  This court has held that "all contracts for advancement and indemnification are subject to an implied reasonableness term."  Therefore, a reasonableness inquiry *is* appropriate even if the indemnification agreement does not expressly condition advancement on the reasonableness of the request.  Further, this court has held that, even though advancement and indemnification are independent rights, advancement continues to be "a subsidiary element of the ultimate right to indemnification."  Therefore, if an indemnification agreement, like the one at issue here, states that indemnification is provided for expenses "actually and reasonably incurred" and, as a subset of the indemnification provision provides for advancement, then advancement is also available only for expenses

---

[42]No. 163-N, 2004 WL 1921249 (Del. Ch. Aug. 27, 2004), *rev'd in part on other grounds*, 884 A.2d 500 (Del. 2005).

[43]*Id.* at *4.

"actually and reasonably incurred."[44]

Having concluded that a reasonableness inquiry is appropriate at the advancement stage, the *Kaung I* court turned to applying the facts of that case to determine what is reasonable.[45] "To determine the reasonableness of legal fees, the court will normally look to the number of hours spent and the cost per hour."[46]  In the *Kaung I* case, however, the court was faced with the "unique scenario" of a plaintiff who used as his primary advisor a non-lawyer consultant; a large part of the reasonableness inquiry thus rested on whether Kuang was allowed to recover any fees related to the consulting services.[47]  Since the consultant was not an appropriate representative for purposes of the parties' indemnification agreement, the corporation was not required to advance any of those fees.[48]  On appeal, the Delaware Supreme Court upheld the Chancery Court's denial of the consultant's fees, but reversed the court's holding that the corporation was "entitled to set off any future advancement obligation owed to the [former officer] all sums previously advanced with respect to [the consultant's services]."[49]

There is no question that Lake's request for advancement of legal fees stems from a

---

[44]*Id*. (citations omitted) (emphasis in original).

[45]*Id*. at *5.

[46]*Id*. (citing *Dunlap v. Sunbeam Corp.*, 1999 WL 1261339, at *6 n.9 (Del. Ch. July  9, 1999) (discussing how to determine the reasonableness of legal fees in an advancement context when reasonableness is not defined by the parties in their agreements on indemnification and concluding that "[a]ny element of reasonability is derived solely from the overall requirement of reasonableness found in the Delaware General Corporation Law . . .") and *Citadel*, 603 A.2d at 825 n.8 (holding that a plaintiff must demonstrate the reasonableness of his advancement request and, in doing so, "[a]ny discovery here authorized is limited to the quantum of the expenditure, including a specification of work performed. . . .").

[47]*Id*.

[48]*Id*.

[49]*Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005) ("*Kaung II*").

23

criminal proceeding arising from his service as a Westar officer and that he has executed an Undertaking, thus triggering his right to advancement.  While strongly disputing that any portion of his advancement request is so "patently unreasonable as to be abusive" of his advancement right, Lake urges that it is beyond factual dispute that Westar's failure to pay any amount for the second trial or appeal therefrom cannot rationally be based on reasonableness grounds and is unjustified.  Lake thus seeks partial summary judgment on the issue of whether Westar has breached its advancement obligations to him.  By way of remedy, Lake suggests the Court order Westar to advance 82% of its legal fees and expenses for the second trial, which represents the amount advanced by Westar during the first trial.

The Court declines to limit its inquiry to Lake's heightened standard of "patent" unreasonableness.  Instead, it will apply the facts of this case to determine what is reasonable, in the context of overall reasonableness as required by Delaware courts.  Westar's primary objection to advancing Lake's legal fees and expenses is that those fees are "unreasonable" insofar as Lake retained attorneys and incurred fees at rates exceeding those customarily charged in Kansas.  Westar does not contend that all fees incurred by Lake in connection with the second trial are per se unreasonable and that none of the time spent in connection with that trial and related post-trial matters and appeal was reasonable.[50]  Rather, Westar contends that it has advanced to Lake an amount sufficient to cover all fees and expenses that could be reasonably incurred for the Criminal Case, including the second trial, post-trial matters and appeals.[51]  By way of example, Westar posits that if reasonable hourly rates lead to an average hourly rate of

---

[50](Doc. 66 at 5.)

[51]Westar does not appear to extend this argument to the upcoming third trial, instead arguing that it should only be required to advance reasonable legal fees and expenses at the appropriate Kansas hourly rate.

$175 rather than $400, and if rather than 21,000 plus hours and 70 timekeepers it was only reasonably necessary to spend 17,000 hours, then Westar's advancement obligation for the Criminal Case would be less than the amount it has already paid against its advancement obligation.  Thus, Westar concludes, it has satisfied its advancement obligation, which it characterizes as "an overall obligation which it owes to Lake and not any particular law firm or for any particular aspect of Lake's representation."

Westar also cites to the letter of March 9, 2005, wherein Westar reserved its right to challenge the reasonableness of Lake's legal fees and expenses in the future for purposes of advancement or indemnification.  Per that letter, any advancements that had been made by Westar shall not be considered a waiver of Westar's rights to challenge future legal fees and expenses.  Westar now contends that the appropriate hourly rate is one factor to consider in determining reasonableness.  Lake's request that the Court order Westar to pay 82% of Lake's requested advance is, in Westar's view, nothing more than a request that this Court find that amount to be reasonable without regard to the hourly rate or the time spent.

Neither the Articles, Lake's contract nor his Undertaking contain any contractual limitation as to choice of counsel or hourly rates.  Had Westar intended to limit an indemnified party's choice of counsel by rates or region, it was free to do so in drafting its advancement and indemnification provisions.[52]  The time to have limited Lake in his choice was at the time of contract formation.  Nevertheless, Westar asks the Court to hold that Lake's selection of counsel was unreasonable because he did not retain in-state counsel.  The Court declines to do so.

---

[52]*See Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 916 (Del. Ch. 1999), *aff'd*, 748 A.2d 407 (Del. 2000) (addressing corporation's advancement provisions that included a provision entitling the corporation to select the corporate officer's counsel).

Where indemnification or advancement is sought, the claimant will have assumed the risk of not being indemnified, and his position when he incurred the expenses should be considered.  In other words, Lake's choice of more expensive, out-of-state lawyers, should be evaluated in the context of his obligations should he be convicted of the pending criminal charges—the more legal fees he incurs, the more legal fees he may have to repay pursuant to the Undertaking.[53] Thus, incurring fees at an out-of-state hourly rate is not inherently unreasonable.  Instead, as discussed below, the reasonableness analysis applicable to a contractual right to attorneys' fees is based on the overall reasonableness term present in all contracts.[54]  The relevant question is whether Lake's decision to retain out-of-state counsel was "necessarily unreasonable."[55]

Lake also argues that Westar is equitably estopped from objecting to non-local rates, having advanced New York City hourly rates to Lake over several years without objection. Westar counters that Lake's claim that Westar's conduct bears on any factor with respect to the reasonableness of the fees for which advancement is sought is refuted by the March 9, 2005 letter agreement that Lake signed.  In that letter, Westar purports to reserve its rights to object to the reasonableness of legal fees and expenses, at both the advancement and indemnification stages of the proceedings.  For purposes of this motion, the Court will assume that Westar preserved its right to object to all aspects of reasonableness of Lake's legal fees and expenses, including hourly rates of New York counsel.  In so ruling, however, the Court notes that Westar waited until the instant suit was filed, almost two years into the Criminal Case, before it raised

---

[53]*See Wilcox v. Sisson*, No. Civ. A. 02-1455, 2006 WL 1443981, at *4 (D.D.C. May 25, 2006).

[54]*United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1550 (10th Cir. 1987).

[55]*Id.*

specific objections to Lake's counsel's hourly rates.  Indeed, even the reservation of rights in the

March 9, 2005 letter failed to inform Lake that it was reserving any rights specifically

concerning objections to his counsel's hourly rates.  When, mid-trial, Westar informed Lake that

it was refusing to advance fees for the second trial, it was on the grounds that this Court's freeze

order prevented it from doing so.  Thus, Lake proceeded to retain New York counsel throughout

two trials, without any specific objection to hourly rates by Westar.  By contrast, Westar made

clear to Wilmer Hale, Washington D.C. appellate counsel, that it objected to that firm's out-of-

state rates.

    The Court thus turns to the issue of reasonable legal fees.  Westar directs the Court to

several cases from various Kansas courts in support of its interpretation of the reasonableness

standard as it applies to attorneys' fees being advanced by a corporation.  These cases hold that,

under Kansas law, the court considers "the fee customarily charged in the locality for similar

legal services."[56]  Most of the cases on which Westar relies, several authored by this Court, deal

with various statutory fee-shifting provisions[57] or fees awarded to a prevailing party in

litigation.[58]  None of these cases, however, address the standards governing the contractually

bargained-for advancement right to legal fees incurred by corporate directors and officers in

litigation arising out of their employment.  Because Lake is seeking to enforce a contract right to

---

[56]*City of Wichita v. B G Prod., Inc.*, 845 P.2d 649, 654 (Kan. 1993) (quoting Kan. R. Prof. Conduct 1.5(a)).

[57]*See, e.g. United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000) (Lanham Act claims under 15 U.S.C. § 1117(a)); *Leidel v. Ameripride Servs., Inc.*, 322 F. Supp. 2d 1206, 1209 (D. Kan. 2004) (Title VII actions under 42 U.S.C. § 2000e-(5)(k)); *Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1273 (D. Kan. 2002) (K.S.A. § 17-1268).

[58]*See Caputo v. Prof'l Recovery Servs., Inc.*, No. 00-4208-SAC, 2004 WL 1503953 (D. Kan. June 9, 2004); *475342 Alberta Ltd. v. Starfire*, Case No. 95-2083-GTV, 1997 WL 457697 (D. Kan. July 31, 1997).

27

advancement of legal fees under Westar's Articles, the Court determines that a different analysis governs its implementation.  The court's role in awarding attorneys' fees predicated on contractual obligations is distinct from its function in fashioning awards under fee-shifting statutes.[59]

> With statutory fee provisions, designed to enable parties to obtain legal help in seeking redress of injuries flowing from the actual or threatened violation of specific laws, the court must calculate an award independently, carefully scrutinizing the attorneys' time and expenses.  In contrast, the purpose of a contract-based award "is to give the parties the benefit of the bargain, and the court's responsibility is to enforce that bargain."[60]

Although this "fundamental dichotomy" does not mean that there are no standards applicable to a contract-based right to attorneys' fees, "the court does not possess the same degree of equitable discretion to deny attorneys' fees under contractual-based awards as it does under fee-shifting statutory provisions."[61]  Instead, the court may deny or reduce the requested contractual-based fees if such an award would be inequitable or unreasonable.[62]  If so, the court has discretion to deny or reduce the fee award.  "However, the trial court is not responsible for independently calculating a 'reasonable' fee."[63]  In considering whether a fee is unreasonable or excessive, the court need not wholly disregard the familiar factors from the federal cases awarding fees in a

---

[59]*475342 Alberta Ltd.*, 1997 WL 457697, at *1 (citing *W. States*, 834 F.2d at 1547-49; *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 962 F. Supp. 1392, 1397 (D. Kan. 1997)).

[60]*W. States*, 834 F.2d at 1548 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)).

[61]*Id.*

[62]*Id.* at 1549.

[63]*Id.*

statutory context.[64]  The Tenth Circuit has explained that a "district court may chose to use these factors, not to compute a reasonable fee, but to assist in determining if the fees claimed are unreasonable or inequitable."[65]

"A district court is considered an expert on the issue of attorney fees.  It may apply its own knowledge and professional experience in determining the value of services rendered."[66] The Kansas Supreme Court has held that, in determining whether a contract-based fee request is inequitable or excessive, the trial court should consider the factors outlined in Rule 1.5 of the Model Rules of Professional Conduct ("MRPC").[67]  Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.[68]

In this case, Lake hired trial counsel from New York City and local counsel from Wichita, Kansas.  He subsequently hired appellate counsel from Washington D.C.  Hughes Hubbard charged hourly rates that ranged from $600 for a partner to $210 for an associate.  Hite

---

[64]*Id*. at 1550.

[65]*Id*.

[66]*Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135 (Kan. 2006).

[67]*City of Wichita v. B G Prods., Inc.*, 845 P.2d 649, 654 (Kan. 1993).

[68]*Id*. (quoting MRPC 1.5).

Fanning, the local Kansas firm, charged hourly rates that ranged from $190 for a senior partner to $110 for an associate.  Wilmer Hale billed hourly rates that ranged from $750 for a partner to $330 for an associate.  Westar asserts that the average hourly rate for lawyers in the Kansas City, Kansas area is $186 per hour.  Absent unusual circumstances, "the fee rates of the local community should be applied even when the lawyers seeking fees are from another area."[69] Courts granting fees in excess of the local rate generally have confined such awards to attorneys possessing "specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation."[70]  A district court, in determining reasonable attorney fees, is not required to accept affidavits of local rates.[71]  "Where local rates are too low for the litigation at issue, the relevant community may be said to be comprised of that group of attorneys specializing in the relevant law and in complex litigation."[72]

The Court finds that there are sufficiently unusual circumstances in the Criminal Case to warrant the hourly fees sought by Lake's New York and Washington D.C. counsel.  Major, intricate and complex white-collar defense is in no sense a "common specialty."[73]  What that hourly rate should be, however, remains to be determined.  While the Court has no reason to dispute the hourly rates charged, there are no affidavits or evidence before the Court regarding

[69]*Ramos v. Lamm*, 713 F. 2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

[70]*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 663 F. Supp. 1360, 1454 (D. Kan. 1987) (citations omitted), *aff'd*, 899 F.2d 951 (10th Cir. 1990); *see Kan. Turnpike Auth. v. Morgan Guar. Trust Co. of New York*, 751 F. Supp. 936, 938 (D. Kan. 1990) (underlying case involved complex, high stakes litigation concerning "one of the most complicated financing issues in Kansas in years.").

[71]*Reazin*, 663 F. Supp at 1453 (citation omitted).

[72]*Id*. (citation omitted).

[73]*Cf. Ramos*, 713 F.2d at 555 (declaring that civil rights cases have become a "common specialty," and therefore application of the local rate in that case was proper).

comparable rates for New York or Washington D.C. counsel.

Westar's refusal to advance further legal fees and expenses on the grounds that it advanced more than enough in the first trial to cover the second trial and appeal is premised on its discount of Hughes Hubbard's hourly rates to those customarily charged in Kansas—a discount of almost two-thirds of the rates charged by New York counsel.  That position is no longer tenable.  Because Westar believes that it has advanced amounts more than sufficient to cover Lake's legal fees and expenses, it justifies its refusal to advance any more fees on its purported right to set-off against any future advancement obligation owed to Lake.  However, the Delaware Supreme Court held in *Kaung II* that such set-off by the corporation is premature at the advancement stage.[74]  The court explained that "the narrow scope of an advancement proceeding prohibits an ultimate determination of indemnification and liability owed by a corporate official for sums already advanced."[75]  Disposition of sums already advanced necessarily would be reserved for subsequent indemnification proceedings.[76]  Thus, Westar's so-called set-off of future advancement funds is both inappropriate and premature.

Having made the threshold determination that out-of-state counsel's hourly rates are not per se unreasonable and that Westar's attempted set-off of future advancements is premature, the Court is prepared to rule that Lake is entitled to advancement of reasonable legal fees and expenses for the second trial, post-trial matters and appeal.  The Court stops short of ruling that Westar's failure to advance any fees for that portion of the trial amounts to a breach of contract,

---

[74]*Kuang v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005).

[75]*Id.* at 509.

[76]*Id*; *see United States v. Stein*, 435 F. Supp. 2d 330, 379 n.237 (S.D.N.Y. 2006) (following *Kuang II*); *Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 620 (D. Md. 2005) (same).

31

as it is compelled to conclude that the overall reasonableness of the legal fees and expenses for which Lake seeks advancement, involves material questions of disputed fact.  Indeed, Lake concedes that the reasonableness *vel non* of certain of his requests for advancement is the subject of dispute and thus not susceptible of resolution on summary judgment.  Accordingly, the Court will defer ruling on the overall reasonableness of the legal fees and expenses, including the ultimate hourly rate, anticipating that the parties will address the issue at the appropriate stage of these proceedings.

### B.    Retrospective Relief

#### *Criminal Case*

Nevertheless, given the procedural posture of the case, the Court finds it appropriate to grant Lake's requested relief in the form of partial payment by Westar, although not in the amounts he suggests.  The Court notes that when Westar filed its Complaint, Lake's appeal to the Tenth Circuit was imminent; when the instant motion was filed, the appeal to the Tenth Circuit was *sub judice*.  If Lake's convictions had been affirmed, the issue of repayment would most likely have been resolved, and reasonableness would no longer be relevant.  Instead, the Tenth Circuit reversed all of Lake's convictions, sending some counts back for possible retrial. Now that the government has announced its intention to retry the remaining counts, and Lake faces a third trial, final resolution of the Criminal Case is most likely years away.  Likewise, determination of the ultimate issue of overall reasonableness and indemnification may also be years away.   The Court is mindful of the summary nature of advancement proceedings, and the issue of the amount of legal fees and expenses Westar is obligated to advance should be decided as expeditiously as possible.  As the Delaware Supreme Court observed, the benefit of

32

advancement is "forever lost" if payment is not made promptly.[77]

Because Lake is entitled to advancement of reasonable legal fees and expenses, the Court determines that the appropriate measure of interim relief is immediate payment of 50% of the outstanding requests for out-of-state counsel, Hughes Hubbard and Wilmer Hale, and payment in full for local counsel, Hite Fanning.  Per Lake's submissions, he is seeking past-due advancement in the amount of $6,274,116.67.  Westar shall pay 50% of the legal fees and expenses attributable to Hughes Hubbard and Wilmer Hale, and 100% of the legal fees and expenses attributable to Hite Fanning.

The Court bases these amounts on several factors.  First, the Court has the unique perspective of having presided over the entirety of the Criminal Case, including numerous pretrial issues, two trials, and sentencing.  Although non-local counsel's hourly rates are not per se unreasonable, the Court notes that Westar's concerns about multiple lawyers billing for the Criminal Case appear to be well taken.  As Westar points out, the seemingly clerical nature of some of the activities billed for is also cause for concern.  Moreover, because the second trial involved many of the same issues as the first, much of the preliminary work had been done, including pretrial motions and jury instructions.  As for appellate counsel, the Court notes that Lake retained a firm with a national reputation for white-collar criminal appeals, that was successful in obtaining reversal of all of the convictions, albeit with remand of some counts for retrial.  As with trial counsel, however, the Court notes that numerous counsel—indeed, as many as seven—were billing for the appeal.  Accordingly, the Court finds that an interim payment of 50% of the requested advancement is appropriate for out-of-state counsel, who took the lead at

[77]*Homestore, Inc. v. Tafeen*, 886 A.2d 502, 505 (Del. 2005).

trial and on appeal.

Local counsel, however, are in a different position.  It is undisputed that Westar has never objected to the reasonableness of Hite Fanning's hourly rate or amount of hours billed.  Indeed, Westar has suggested local Kansas rates as the appropriate rate for all counsel in the Criminal Case.  Instead, Westar's only challenge to the reasonableness of local counsel's legal fees and expenses is the fact that they were required to attend the second trial as local counsel, due in large part, to the behavior of Hughes Hubbard counsel.  However, that requirement was by order of the Court, so the reasonableness of that particular work or activity is not at issue in the context of the reasonableness of Hite Fanning's legal fees and expenses.  The Court notes that the issue of multiple timekeepers is not an issue for local counsel, as only one Hite Fanning lawyer appeared at a time in the Criminal Case.  The Court recognizes that the reasonableness of local counsel's appearance at the second trial may very well be at issue in the context of the overall reasonableness of legal fees and expenses.  Nevertheless, under the circumstances, the Court concludes that payment in full of local counsel is justified.

In so ruling, the Court stresses that, aside from hourly rates, it does not mean to give any advance ruling on what it considers to be reasonable legal fees and expenses—that issue is deferred to the appropriate stage of these proceedings.  Consistent with the case law discussed above, such interim relief shall in no way compromise Westar's right at the indemnification stage to recoup so much of the above amounts as are ultimately deemed unreasonable, if any.  Similarly, provided Lake is ultimately entitled to indemnification, such interim relief shall in no way compromise Lake's right at the indemnification stage to establish that he is entitled to more than the amount awarded in this order.  The parties shall also reserve all rights to additional

advancement shortfalls or overages that are presently the subject of their reasonableness dispute.

### *Civil Cases*

The Class and Derivative Actions are in a different posture than the Criminal Case. Orders approving final settlement were entered September 1, 2005.  Thus, it appears to the Court that the issue has become one of indemnification.  Accordingly, Lake's motion is denied with respect to the civil matters.

### C.      Prospective Relief

Observing that recent events have raised additional questions with respect to Westar's advancement obligation the Court sought supplemental briefing of the instant motion for summary judgment on the issue of Westar's liability with respect to future advancement of fees and expenses in the upcoming third trial.  Both Westar and Lake assert that prospective advancement is appropriately addressed within the scope and context of the instant motion, although their suggestions on how to proceed differ.  Westar proposes the Court set hourly rates for Westar to pay Lake's counsel at rates customarily charged in Kansas for white-collar criminal defense, while Lake proposes the Court establish a procedure for advancement of legal fees and expenses at his chosen counsel's customary rates.

Having made the threshold determination that Lake's counsel's hourly rates are not per se unreasonable, the Court rules that Lake is entitled to prospective advancement of legal fees and expenses for the third trial and any post-trial matters or appeals prior to final disposition of the Criminal Case.  The Court finds it necessary to exercise its equitable power to establish certain limited procedures to ensure Westar complies with its advancement obligations going

forward, while preserving its rights to object to reasonableness at both the advancement and, ultimately, the indemnification proceeding.  Accordingly, the Court establishes the following procedures for prospective advancement of legal fees and expenses:

1. Westar shall pay Lake's legal fees and expenses within 30 days of receipt, at his chosen lawyer's customary rates.  Westar shall have a continuing objection to counsel's hourly rates, if applicable, and such rates shall be subject to further order of the Court regarding their reasonableness.

2. If  Westar believes that a particular charge or disbursement is unreasonable, it may (a) within 10 days of receipt of the bill, specify by letter to Lake's counsel the charge(s) or disbursement(s) to which it objects, along with specific reasons for the objection(s); (b) timely pay the portion of the bill to which it does not object; **and** (c) should the parties fail to settle within 10 days of Lake's counsel's receipt of Westar's objections, submit to Magistrate Judge O'Hara, under seal, the relevant documentation so that Judge O'Hara can, as soon as practicable, assess the merits of Westar's challenge.

With this procedure in place, the Court stresses that it obviously cannot and will not prejudge any application by Westar in this action to challenge particular designations. Moreover, by enacting these procedures, the Court makes clear that it is not authorizing Lake a "blank check."  Indeed, Lake's counsel suggested at a recent hearing that the third trial would be much less complicated to try, as much of the previous work may be duplicated.  It would behoove all counsel to keep in mind the standards of reasonableness set forth in this opinion and, specifically, MRPC 1.5, when submitting their request for advancement of legal fees and

36

expenses and any objections thereto.

**IT IS THEREFORE ORDERED BY THE COURT** that Lake's motion for partial summary judgment (Doc. 58) is GRANTED IN PART as to his entitlement to advancement of legal fees and expenses in the Criminal Case; and DENIED with respect to the Civil Actions.

IT IS SO ORDERED.

Dated this  28th  day of June 2007.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge