lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WESTAR ENERGY, INC.,       )
          )
        Plaintiff,   )
          )
    vs.        )    Case No. 05-4116-JAR
          )
DOUGLAS T. LAKE,      )
          )
        Defendant.  )
_____)

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Westar Energy Inc.'s ("Westar") Motion to Set Bond as to the Court's June 28, 2007 Order (Doc. 86). Defendant Douglas T. Lake has responded, and Westar has filed a reply. For the reasons explained in detail below, the Court clarifies and revises the June 28, 2007 Order and denies Westar's motion for bond.

### Procedural Background

On June 28, 2007, the Court issued a Memorandum Order and Opinion ("the Order") (Doc. 82), granting in part Lake's Motion for Summary Judgment. Highly summarized, the Order held that Lake was entitled to "retrospective" advancement of fees and expenses for the second trial, post-trial proceedings and appeal, and granted partial relief of 50% payment of past-due fees for non-local counsel and 100% for local counsel. The Order also established a procedure for advancement of legal fees and expenses on a "prospective" basis for the upcoming third trial. The Court relies on the Order by reference in ruling on the instant motion, and specific terms of the Order are discussed in more detail below.

### Discussion

Pursuant to Fed. R. Civ. P. 65(c) and 52(b), Westar requests the Court require Lake to provide a bond in the amount of $4.2 million as appropriate security for the payment of such costs and damages as may be incurred or suffered by Westar if it is determined that the relief awarded against Westar in the Order was wrongfully granted and that the Court make additional findings to support requiring security in connection with the Order.[1]  Westar contends that the Order constitutes interlocutory, preliminary injunctive relief, but that the Court did not consider what appropriate security Lake should provide as required by Rule 65(c).

Rule 52(b) provides that the district court, upon motion of a party, may amend its findings or make additional findings and may amend the judgment accordingly.[2]  The primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon.[3]  A motion made pursuant to Rule 52(b) will only be granted when the moving party can show either manifest errors of law or fact, or newly discovered evidence; it is not an opportunity for parties to relitigate old issues or to advance new theories.[4]  A motion under Rule 52(b) must be "made not later than ten days after entry of judgment."[5]  The motion may be made before the judgment is entered.[6]  In this case, there is no question that the Order is interlocutory.

---

[1]This figure corresponds to the approximately $3.2 million in retrospective fees awarded in the Order and Westar's estimate of approximately $1 million in prospective fees for the third trial.

[2]Fed. R. Civ. P. 52(b).

[3] 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2582 (2d ed. 1995).

[4]*Id*.

[5]Fed. R. Civ. P. 52(b).

[6]9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* R. 52 (2d ed. 1995).

Although filed more than ten days after the Order, because the Order does not constitute a "final judgment," Westar's motion is not untimely under Rule 52(b).

In addition, it is well within the court's discretion to revise an interlocutory order at any time prior to the entry of final judgment.[7]  Pursuant to Rule 54(b), a "court's disposition of a single claim in a suit involving multiple claims is subject to reconsideration until the entry of judgment on all the claims, absent an explicit direction for the entry of judgment on the single claim."[8]  The court may, *sua sponte* or on motion, correct clear errors of fact or law in an interlocutory order.[9]  Reconsideration is appropriate where "the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."[10]  When considering such revision of an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion.[11]

Finally, Rule 65(c) provides that "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is

---

[7]Fed. R. Civ. P. 54(b); *Ferluga v. Eickhoff*, 236 F.R.D. 546, 548 (D. Kan. 2006) (citing *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)).

[8]*First Am. Kickapoo Operations, LLC v. Multimedia Games, Inc.*, 412 F.3d 1166, 1170 (10th Cir. 2005) (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.")).

[9]*Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995) (citation omitted).

[10]*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F. 2d 1185, 1191 (7th Cir. 1990) (citation omitted).

[11]*See Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 Fed. App'x 760, 2007 WL 80698, at *3-4 (10th Cir. Jan. 12, 2007); *Raytheon Constructors Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).

3

found to have been wrongfully enjoined or restrained."[12]

### 1.    Clarification and Revision of the Order

Westar asserts that the Order is a preliminary injunction because it imposes an affirmative obligation on Westar to pay Lake legal fees for the second trial and beyond in advance of a determination of the merits of Westar having any liability on Lake's claim.[13] Westar also refers to the Order as "internally inconsistent," although it does not elaborate on this claim.  As a threshold matter, the Court will address Westar's characterization of the Order and clarify and revise the same to the extent necessary.

In the Order, the Court attempted to address a discrete legal issue—whether Westar must honor its obligation to advance Lake his legal fees and expenses under the terms of Westar's Articles of Incorporation (the "Articles").  After holding that the standard for such determination was whether the advancement request was reasonable in the context of overall reasonableness, the Court turned to Westar's primary objection to advancing Lake's legal fees and expenses for the second trial—that those fees are unreasonable insofar as Lake retained attorneys and incurred fees at rates far exceeding those customarily charged in Kansas.  Significantly, Westar did not contend that *all* fees incurred by Lake in connection with the second trial were per se unreasonable and that *none* of the time spent in connection with that trial and post-trial related matters and appeal was reasonable.[14]  Instead, Westar contended that it had already advanced to Lake an amount sufficient to cover all fees and expenses that could reasonably be incurred for

---

[12]Fed. R. Civ. P. 65(c).

[13](Doc. 94 at 4.)

[14](Doc. 66 at 5.)

4

the Criminal Case, including the second trial, post-trial matters and appeals.  Thus, Westar concluded, it had satisfied its advancement obligation and was justified in declining to advance any fees or expenses for the second trial and beyond.

After extensive analysis, the Court disagreed, and held, as a matter of law, that counsel's non-local hourly rates are not per se unreasonable.  In so ruling the Court determined that there was no contractual limitation on Lake's choice of counsel or hourly rates and, because Lake was seeking to enforce a contract right to legal fees, the Court's role is to give the parties the benefit of the bargain.  After reviewing the relevant factors, the Court concluded that there are sufficiently unusual circumstances in the Criminal Case to warrant the hourly fees sought by Lake's non-local counsel.  Thus, the Court held that Westar's refusal to advance any further legal fees and expenses on the grounds that it advanced more than enough in the first trial to cover the second trial and beyond is no longer tenable.  Moreover, because Westar's position on further advancement was premised on its discount of Lake's counsel's hourly rates to those customarily charged in Kansas—a discount of almost two-thirds—the Court held that Westar's so-called set-off of future advancement funds is both inappropriate and premature.

Having made the determination that non-local counsel's hourly rates are not per se unreasonable and that Westar's attempted set-off was premature, the Court ruled that Lake is entitled to advancement of reasonable legal fees and expenses for the second trial, post-trial matters and appeal.  Although the Court stopped short of ruling that Westar's failure to advance any fees for that portion of the proceedings amounts to a breach of contract, it clearly held as a matter of law that Lake was entitled to advancement of such fees—in other words, Westar was obligated to advance reasonable fees for that portion of the Criminal Case.  While the Court was

5

able to rule as a matter of law that non-local counsel's hourly rates were not per se unreasonable, certain other issues regarding the overall reasonableness of fees to be advanced for the second trial and appeal involved material questions of disputed fact, or were not yet before the Court. These contested issues are spelled out, in part, in the Order, and include multiple timekeepers and the nature of tasks billed.  Accordingly, the Court deferred ruling on the overall reasonableness of the entire amount claimed by Lake, including the ultimate hourly rate for Lake's counsel, until the appropriate stage of these proceedings.  Implicit in its ruling, however, is that Westar's refusal to advance any further fees and expenses is unreasonable, given the fact that the non-local hourly rates are not per se unreasonable.  The Court ruled that Westar is obligated to advance reasonable fees for the second trial and beyond.  Clearly, $0 is not reasonable.

Although it deferred the ultimate determination of overall reasonableness, the Court proceeded to find that, given Lake's entitlement to advancement of fees for the second trial and appeal, coupled with the procedural posture of the case and resulting extensive delay, it was appropriate to grant Lake interim relief in the form of partial payment by Westar.  Thus, Westar's characterization of the Order imposing an affirmative obligation on Westar to honor its advancement obligation in advance of determination of the merits of Westar's liability is inaccurate.

Nevertheless, the Court recognizes that certain aspects of the Order may have unintentionally created confusion and may not clearly reflect the Court's intent as set forth above.  Thus, to the extent there is any question regarding this or any other aspect of the Court's ruling, the Order is clarified and revised as follows:

Having made the threshold determination that out-of-state counsel's hourly rates are not per se unreasonable and that Westar's attempted set-off of future advancements is premature, the Court concludes that Westar is contractually obligated to advance Lake reasonable fees and expenses for the second trial, post-trial matters and appeal. Westar's refusal to advance *any* further fees is unreasonable in light of the Court's ruling that non-local counsel's hourly rates are not per se unreasonable. Thus, upon further consideration, the Court amends the Order, and finds that Westar's failure to advance any fees for that portion of the trial amounts to a breach of contract.

This leaves the matter of remedy. Lake concedes that the reasonableness of certain aspects of his requests for advancement involve material questions of disputed fact, and are thus not able to be resolved on summary judgment. Accordingly, the Court defers ruling on the ultimate determination of overall reasonableness, including the ultimate hourly rate of non-local counsel until the appropriate stage of these proceedings—that is, the indemnification stage after the Criminal Case has concluded. However, given the procedural posture of the case, the Court continues to find it appropriate to grant Lake's requested relief in the form of partial payment of retrospective fees, as set forth in the Order. Westar's refusal to advance further fees was premised on its discount of Lake's counsel's hourly rates by almost two-thirds. Because the Court has determined that the national hourly rates are not per se unreasonable, it is able to conclude that advancement of 50% of the requested fees for out-of-state counsel on an interim basis is reasonable, even without determining the ultimate hourly rate or remaining issues of fact. As discussed in the Order, such interim relief shall not compromise either party's rights at the indemnification stage of the proceedings. The Order shall remain unchanged as to interim relief

7

for local counsel as well as prospective relief for the third trial.

      **2.**      **Preliminary Injunction**

      The Order was entered on Lake's Motion for Summary Judgment on his counterclaim for breach of contract and partial relief thereon.  Lake sought for the Court to order that Westar immediately advance legal fees and expenses to Lake for the second trial and appeal arising therefrom.  While conceding that certain issues surrounding the reasonableness of the legal fees and expenses for which he was seeking were the subject of dispute and not able to be resolved on summary judgment, Lake argued that there was no dispute that Westar acted improperly and unlawfully by refusing to advance any fees or expenses for the second trial and appeal.  Accordingly, Lake did not request the entire amount of legal fees and expenses for the second trial and appeal, but rather, suggested the Court award immediate payment of a percentage based on amounts Westar had advanced in the first trial.  Westar opposed the motion on a variety of bases, including the merits of the allegation that the advancement obligation had been breached, that the issue of reasonableness of the fees and expenses involved disputed issues of material fact, and that the fees and expenses for the second trial and appeal were no longer on a "real time basis," with no resulting harm to Lake.  Westar took the position that the non-local rates in Lake's request for advancement were unreasonable as a matter of law on the evidentiary record before the court.[15]

      In supplemental briefing requested by the Court, Westar stated that the Court could address the issue of advancement of future fees and expenses for the upcoming third trial by determining what constituted a reasonable hourly rate, which it asserted to be local Kansas rates.

---

[15](Doc. 66 at 35.)

Lake took the position in his supplemental briefing that his summary judgment motion entitled him to judgment on his breach of contract claim as a matter of law on the fees and expenses for the second trial and appeal.  He also took the position that his prayer for relief in his counterclaim gave the Court authority to grant specific performance and/or other equitable remedies with respect to prospective fees for the upcoming third trial.  Lake requested that any order granting his summary judgment motion include, in addition to money damages, equitable relief that Westar be required to fully comply with its contractual advancement obligation on a prospective basis.

Westar contends that the Order requires Westar to specifically perform in part the advancement obligation that forms the basis of Lake's claim for breach of contract.  It asserts that specific performance of an agreement "falls under the definition of an injunctive order because it [is] 'directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought' by that party."[16]  Thus, Westar argues, the Order is a preliminary injunction.  This appears to be key to whether Westar may appeal the order pursuant to 28 U.S.C. § 1292(a)(1).[17]

The submissions on the motion for summary judgment indicate that neither Westar nor Lake ever regarded the interim or interlocutory order that Lake sought by way of his motion for summary judgment to be a request for preliminary injunction subject to Rule 65.  The only injunctive relief requested was in the context of Lake's supplemental briefing requesting specific performance on a prospective basis for the third trial.  Westar offered to advance in good faith

---

[16]*Sheet Metal Workers v. Herre Bros., Inc.*, 201 F.3d 231, 238 (3rd Cir. 1999).

[17]Section 1292(a)(1) conveys "jurisdiction of appeals from interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions."

9

reasonable fees and expenses for the third trial and specifically requested the Court to set hourly rates for Westar to pay Lake's counsel at rates customarily charged in Kansas. And, based on these submissions, the Court certainly did not regard the matter before it as a request for preliminary injunction.

It is clear in this case that the Order, both before and after clarification and revision, does not, as a technical matter, involve a request for or rule on a motion for preliminary injunction. Nevertheless, the Court recognizes that the Order is interlocutory and may arguably be construed as injunctive in practical effect. However, any label this Court uses to describe the Order is not controlling; instead, the court of appeals analyzes the substance of the Order, not its label or form.[18] Although this Court does not consider the Order a preliminary injunction, its characterization is of no consequence, and the Court limits its discussion accordingly.

That said, the Court notes that although the issue of appellate jurisdiction is clearly one for the court of appeals, it appears that the requirements of § 1292(a)(1) have not been met in this case. The Supreme Court has determined that § 1292(a)(1) is a "limited exception to the final-judgment rule" and that "unless a litigant can show that an interlocutory order of the district court might have a serious, perhaps irreparable, consequence, and that the order can be effectually challenged only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal."[19] For appellate jurisdiction, *Carson v. American Brands, Inc.* requires the challenged order have (1) the practical effect of refusing or granting an injunction, (2) threaten a serious, perhaps irreparable, consequence, and be (3)

---

[18]*Albright v. UNUM Life Ins. Co. of Am.*, 59 F.3d 1089, 1092 (10th Cir. 1995) (quotation omitted).

[19]*Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981) (internal quotations omitted)).

effectually challenged only by immediate appeal.[20]  It does not appear that Westar can show either the second or third factor.  Because the Court has deferred determination of overall reasonableness, and because the parties' rights at the indemnification phase are preserved, it is clear that the Order can be effectively challenged after the case is final.  Indeed, the concept of advancement is based on the expectation that the final review of the reasonableness of fees will occur at the indemnification stage, after the final disposition of the litigation.  And, as discussed below in the context of its request for bond, Westar cannot show that irreparable consequences are threatened.

### 3.    Appropriateness of Bond

Westar files the instant motion for bond on the basis that in issuing what it characterizes as preliminary injunctive relief, the Court did not consider what appropriate security Lake should provide as required by Rule 65(c).  Without such consideration, Westar asserts, the Order appears to be unenforceable and not appealable at this stage of the proceeding.[21]

Because no motion for preliminary injunction was before the Court, it did not undertake a Rule 65 analysis or make any findings with respect to the appropriateness of a bond.  Assuming, *arguendo*, that Rule 65(c) applies, the Court declines to require Lake to provide a bond as security in connection with the Order.  First, Westar's Articles require it to advance legal fees to a corporate official upon delivery of an undertaking to repay all amounts advanced if the

---

[20]*Utah State Dept. of Health v. Kennecott Corp.*, 14 F.3d 1489, 1496 (10th Cir.), *cert. denied*, 513 U.S. 872 (1994) (citing *Carson*, 450 U.S. at 84); *United States v. Colorado*, 937 F.2d 505, 507-08 (10th Cir. 1991)).

[21](Doc. 86 at 2) (citing *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987)).

11

executive is ultimately found not to be entitled to indemnification.[22]  Lake signed and delivered

such an Undertaking.[23]  There was no requirement in the Articles that an indemnified person

provide proof of ability to repay or submit a secured bond.[24]  By enacting the Articles in their

liberal form, Westar accepted the allocation of risk between itself and its officers.  In this case,

Lake requested advancement of legal fees and expenses by executing an Undertaking for any

amount owed after indemnification, without proof of ability to pay and without any further

security.  Westar's contractual agreement to provide advancement of legal fees and expenses

necessarily assumes that the final determination on the propriety of the advancements will be

made at a later indemnification proceeding.  Thus, pursuant to the Articles, Lake's Undertaking

was all that was required to afford Westar sufficient protection pending final indemnification.

Similarly, the Court determines that Lake's Undertaking is sufficient to protect Westar pending

any interlocutory appeal.

This determination is not changed by Lake's representation to the Court in the Criminal

Case that he "has no assets sufficient to pay legal fees and expenses for his defense in the third

trial, or to satisfy the legal fees and expenses already charged for the two prior trials and related

proceedings."[25]  Most, if not all, of Lake's assets are subject to criminal forfeiture and are subject

---

[22](Doc. 82 at 3-4.)

[23]*Id*. at 4.

[24]*See* K.S.A. § 17-6305(e); *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211-12 (Del. 2005) ("In addition to an express undertaking requirement, corporations may specify by bylaw or contract the terms and conditions upon which present and former corporate officials may receive advancement, e.g., proof of an ability to repay or the posting of a secured bond."); *Reddy v. Elec. Data Sys.Corp.*, No. 19467, 2002 WL 1358761, *4 (Del. Ch. June 18, 2002) ("In lieu of this required undertaking, corporations may specify by bylaw or contract the terms and conditions upon which employees and agents may receive advancement, which could include an undertaking and more onerous pre-requisite to advancement.").

[25]Case No. 03-40142, Doc. 823 (Motion to Withdraw at 2.)

12

to a freeze order imposed by the Court in the Criminal Case.[26]  Indeed, most of these assets are in the possession or control of Westar.[27]  And, as set forth in the statement of uncontroverted facts in the Order, Lake previously provided Westar "additional assurance for advancement of Mr. Lake's legal bills beyond the undertaking signed by Mr. Lake" by agreeing that in the event of a conviction in the Criminal Case, "Mr. Lake will forfeit to [Westar] any right he might have to any assets being held by [Westar] . . . to the extent necessary to satisfy repayment of advances for legal fees."[28]  The records in the Criminal Case indicate that these potentially forfeitable assets, which include any arbitration award granted to Lake, are worth millions of dollars.[29]  The Court offers no opinion regarding the continuing enforcement of such "additional assurance" to the Undertaking, but merely notes it as a potential source of repayment should it ultimately be determined that Lake is not entitled to indemnification.

Second, imposing a bond in the amount requested by Westar would in effect nullify Lake's right to advancement of fees and expenses.  As the Court stated in the Order, advancement "provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings."[30]  Advancement "fills the gap . . . so the corporation may

---

[26]*Id*. Doc. 836.

[27]*Id*.

[28](Doc. 82 at 9.)

[29]Lake's counterclaim against Westar in the arbitration proceedings is for approximately $70 million.  *See* Case No. 03-40142-JAR, First Superseding Indictment (Doc. 126);  Special Verdict Forms, Count 40-Forfeiture (Docs. 543, 535.)

[30](Doc. 82 at 18) (citing *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005)).

13

shoulder . . . interim costs."[31]  Imposition of a bond in this case, and under these circumstances, would allow Westar to avoid its advancement obligations and effectively destroy Lake's rights thereto.  And, Westar's position completely ignores the possibility that Lake will be acquitted in the third trial.

Finally, Westar appears to concede that a bond will not likely be necessary as to prospective advancement of fees for the third trial.  Lake's New York counsel have sought to withdraw from the Criminal Case and have advised the Court that substitute counsel from Kansas City, Missouri, is prepared to enter an appearance.  Given that Westar has offered to advance "reasonable" fees for the third trial at customary local Kansas City rates, no such bond is necessary.  Moreover, even if non-local counsel continue to represent Lake in the Criminal Case, the Court has imposed limited procedures to ensure Westar complies with its advancement obligations going forward, while preserving its rights to object to reasonableness at both the advancement and, ultimately, the indemnification proceeding.  With these procedures in place, a bond for prospective advancement is not necessary.  Westar's motion to set bond is denied.

### 4.    Motion for Stay

As Westar has not moved to stay the Order, but merely expressed its intent to do so in the event its request for bond is denied, the issue is not presently before the Court.

**IT IS THEREFORE ORDERED BY THE COURT** that the June 28, 2007 Order is clarified and revised as set forth herein;

**IT IS FURTHER ORDERED** that Westar's Motion for Bond is DENIED.

IT IS SO ORDERED.

---

[31]*Id.* (citing *Kaung v. Cole Nat'l Corp.*, 884 A.2d 505, 509 (Del. 2005)).

Dated this  22nd  day of August 2007.

 S/ Julie A. Robinson      
Julie A. Robinson
United States District Judge